**IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION**

| | | |
|---|---|---|
| LISA A. ROSS, as Special Administrator | ) | |
| of the Estate of DEVON A. ROSS, Deceased | ) | |
| | ) | |
| Plaintiff, | ) | |
| vs. | ) | No.  13 C 751 |
| | ) | |
| CITY OF CHICAGO, a municipal corporation | ) | Judge Der-Yeghiayan |
| and JAMIE M. CHESNA, an individual, | ) | |
| | ) | |
| Defendants. | ) | Jury Demand |

**DEFENDANT CHESNA'S ANSWER TO PLAINTIFF'S
SECOND AMENDED COMPLAINT AT LAW**

Defendant Jamie M. Chesna ("Chesna"), by one of her attorneys, answers plaintiff's

second amended complaint at law as follows:

1.     Plaintiff LISA A. ROSS is the mother of DEVON A. ROSS and the duly
appointed Special Administrator of his Estate. (Ex. A.)

**Answer**:     Defendant Chesna lacks knowledge or information sufficient to form a belief

as to the truth of the allegations in paragraph 1.

2.     Defendant City of Chicago is a municipal corporation.

**Answer**:     Defendant Chesna admits the allegations in paragraph 2.

3.     Defendant City of Chicago's principal office is located in Cook County, Illinois.

**Answer**:     Defendant Chesna admits the allegations in paragraph 3.

4.     Defendant Jamie Chesna lives in Cook County, Illinois.

**Answer**:     Defendant Chesna admits the allegations in paragraph 4.

5.     Defendant Jamie Chesna is employed by defendant City of Chicago as a police
officer.

**Answer**:     Defendant Chesna admits the allegations in paragraph 5.

6.      At all times mentioned herein, defendant Jamie Chesna was acting within the scope of her employment with the defendant City of Chicago.

**Answer**:      Defendant Chesna admits the allegations in paragraph 6.

7.      All events mentioned herein occurred in Cook County, Illinois.

**Answer**:      Defendant Chesna admits the allegations in paragraph 7.

## FACTS

8.      On November 24, 2011, Devon Ross exited his vehicle near the intersection of 73rd Street and Emerald Avenue in Chicago.

**Answer**:      Defendant Chesna admits that on November 24, 2011, Devon Ross exited a vehicle he was driving near 706 W. 74th Street in Chicago after Devon Ross drove said vehicle off the roadway, onto the parkway, onto the sidewalk, and crashed into the building at 706 W. 74th Street in Chicago, but lacks knowledge or information sufficient to form a belief as to the truth of the remaining allegations in paragraph 8.  In further answering, Defendant Chesna denies plaintiff's chronology of events.

9.      At that time and place, Defendant Jamie Chesna chased after Devon Ross on foot.

**Answer**:      Defendant Chesna admits that on November 24, 2011, she was dressed in a Chicago Police Department uniform and traveling in a marked Chicago Police Department squad car, and that she chased after Devon Ross on foot after Devon Ross drove a vehicle off the roadway, onto the parkway, onto the sidewalk, crashed said vehicle into a building, exited said vehicle at 706 W. 74th Street in Chicago, and fled from that vehicle.

10.      At some point during the chase, Devon Ross entered the front yard of 7344 S. Emerald Avenue.

2

**Answer**:    Defendant Chesna admits that at some point during the chase, Devon Ross entered through the front gate and ran down the gangway of 7344 S. Emerald Avenue.

11.    Defendant Jamie Chesna followed Devon Ross into the front yard of 7344 S. Emerald Avenue.

**Answer**:    Defendant Chesna admits she followed Devon Ross through the front gate and down the gangway of 7344 S. Emerald Avenue, but denies the remaining allegations in paragraph 11.

12.    Devon Ross tried to get away from Defendant Jamie Chesna by jumping over a chain-link fence separating 7344 S. Emerald Avenue and the house immediately to the north.

**Answer**:    Defendant Chesna denies the allegations in paragraph 12.

13.    Defendant Jamie Chesna grabbed Devon Ross and pulled him off the fence.

**Answer**:    Defendant Chesna admits that at some point she pulled Devon Ross off the black fence to the south of 7344 S. Emerald, but denies the remaining allegations in paragraph 13.

14.    Defendant Jamie Chesna deliberately un-holstered her firearm and pointed its barrel at Devon Ross' body.

**Answer**:    Defendant Chesna admits that on November 24, 2011, she deliberately unholstered her firearm and pointed its barrel at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna unholstered her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she

unholstered her firearm and pointed it at Ross.

15.     With her firearm aimed at Devon Ross' body, defendant Jamie Chesna deliberately pulled the trigger once.

**Answer**:     Defendant Chesna admits that on November 24, 2011, she deliberately pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

16.     With her firearm aimed at Devon Ross' body, defendant Jamie Chesna deliberately pulled the trigger a second time.

**Answer**:     Defendant Chesna admits that on November 24, 2011, she deliberately pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

17.     With her firearm aimed at Devon Ross' body, defendant Jamie Chesna deliberately pulled the trigger a third time.

4

**Answer**:     Defendant Chesna admits that on November 24, 2011, she deliberately pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

18.     When defendant Jamie Chesna pulled the trigger of her handgun while it was aimed at the body of Devon Ross on November 24, 2011, defendant Jamie Chesna knew it was likely that bullets would strike Devon Ross' body.

**Answer**:     Defendant Chesna admits that on November 24, 2011, she deliberately pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.  Defendant Chesna further admits she knew it was a possibility that bullets form her firearm would strike Devon Ross' body, but denies the remaining allegations in paragraph 18.

19.     When defendant Jamie Chesna pulled the trigger of her handgun while it was aimed at the body of Devon Ross on November 24, 2011, defendant Jamie Chesna wanted the bullets to strike the body of Devon Ross.

**Answer**:     Defendant Chesna admits that on November 24, 2011, she deliberately pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to Chesna, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.  Defendant Chesna further admits that when she fired her firearm when it was pointed at Devon Ross' body she wanted to stop the imminent threat of death or great bodily harm which she believed she faced after Devon Ross committed an aggravated battery upon her and refused to cease his actions, but denies the remaining allegations in paragraph 19.

20.     Two bullets fired by defendant Jamie Chesna actually struck Devon Ross' body.

**Answer**:     Upon information ant belief, Defendant Chesna admits the allegations in paragraph 20.

21.     By intentionally shooting Devon Ross, defendant Jamie Chesna engaged in a course of action which showed an actual or deliberate intention to cause harm to Devon Ross.

**Answer**:     Defendant Chesna denies the allegations in paragraph 21.

22.     Devon Ross died as a direct consequence of the bullets fired by defendant Jamie Chesna.

**Answer**:     Upon information and belief, Defendant Chesna admits the allegations in paragraph 22, but denies Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or

6

great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

23.     The manner of Devon Ross' death was homicide.

**Answer**:     Upon information and belief, Defendant Chesna admits the allegations in paragraph 23, but denies Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

24.     At no point on November 24, 2011, did defendant Jamie Chesna hear Devon Ross verbally agreed to being shot.

**Answer**:     Defendant Chesna admits she did not hear Devon Ross agree to being shot while Devon Ross was in her presence and within her range of hearing on November 24, 2011, but denies Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.

25.     Devon Ross is survived by his mother Lisa Ross; his father Willie Ross; his siblings Marcus Ross, Latoya Beck, and Lashonda R. Ross; and his minor daughters Mia Lashay Ross and Jalia Simone Ross.

**Answer**:     Defendant Chesna lacks knowledge or information sufficient to form a belief as to the truth of the allegations in paragraph 25.

## <u>COUNT I - WRONGFUL DEATH - BATTERY - *RESPONDEAT SUPERIOR*</u>
### (v. CITY OF CHICAGO)

26.    Plaintiff re-alleges paragraphs 1-25 of this Complaint as if fully set forth herein.

**<u>Answer</u>**:    Defendant Chesna restates her answers to paragraphs 1-25 of this Complaint as her answer to paragraph 26 as though fully set forth herein.

27.    Defendant City of Chicago, by and through its employee Jamie Chesna, intentionally and forcibly caused an un-consented harmful contact to Devon Ross' person in that Jamie Chesna intentionally shot Devon Ross.

**<u>Answer</u>**:    Defendant Chesna admits that on November 24, 2011, while she was on duty as a City of Chicago police officer, she intentionally pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross.  Defendant Chesna denies the remaining allegations in paragraph 27.

28.    As a direct and proximate result of defendant City of Chicago's intentional conduct, by and through its employee, Jamie Chesna, Devon Ross sustained fatal injuries and died.

**<u>Answer</u>**:    Defendant Chesna admits that on November 24, 2011, she intentionally pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after Devon Ross committed an aggravated battery upon her and refused to cease his actions which placed her in imminent threat of death or great bodily harm, which resulted in Ross' death, but

Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross. Defendant Chesna denies the remaining allegations in paragraph 28.

29.     As a  direct and proximate result of the death of Devon Ross, his next of kin have suffered great losses of a personal and pecuniary nature including the loss of companionship and society, subjecting defendant City of Chicago to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

**Answer**:    Defendant Chesna denies the allegations in paragraph 29.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit, and for such other relief as the court deems appropriate.


**COUNT II SURVIVAL ACT - BATTERY - _RESPONDEAT SUPERIOR_**
(v. CITY OF CHICAGO)

30.     Plaintiff re-alleges paragraphs 26-28 of this Complaint as if fully set forth herein.

**Answer**:    Defendant Chesna restates her answers to paragraphs 26-28 of this Complaint as her answer to paragraph 30 as though fully set forth herein.

31.     As a further direct and proximate result of defendant City of Chicago's aforementioned intentional conduct, by and through its employee Jamie Chesna, Devon Ross suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant City of Chicago to liability pursuant to the Illinois Survival Act, 755 ILCS 5/27-6.

**Answer**:    Defendant Chesna denies the allegations in paragraph 31.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit, and for such other relief as the court deems appropriate.

## COUNT III - WRONGFUL DEATH - BATTERY
### (v. JAMIE CHESNA)

32.    Plaintiff re-alleges paragraphs 1-25 of this Complaint as if fully set forth herein.

**Answer**:    Defendant Chesna restates her answers to paragraphs 1-25 of this Complaint

as her answer to paragraph 32 as though fully set forth herein.

33.    Defendant Jamie Chesna intentionally and forcibly caused an un-consented
harmful contact to Devon Ross' person in that she intentionally shot Devon Ross.

**Answer**:    Defendant Chesna admits that on November 24, 2011, she intentionally

pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after

Devon Ross committed an aggravated battery upon her and refused to cease his actions which

placed her in imminent threat of death or great bodily harm, but Defendant Chesna denies that

Plaintiff has met her burden of proof that at the time Chesna fired her weapon that Chesna did

not reasonably believe that there was an imminent threat of death or great bodily harm to her, and

denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when

she fired her firearm at Ross.  Defendant Chesna denies the remaining allegations in paragraph

33.

34.    As a direct and proximate result of defendant Jamie Chesna's intentional conduct,
Devon Ross sustained fatal injuries and died.

**Answer**:    Defendant Chesna admits that on November 24, 2011, she intentionally

pulled the trigger of her firearm three times while she pointed it at Devon Ross' body after

Devon Ross committed an aggravated battery upon her and refused to cease his actions which

placed her in imminent threat of death or great bodily harm, which resulted in Ross' death, but

Defendant Chesna denies that Plaintiff has met her burden of proof that at the time Chesna fired

10

her weapon that Chesna did not reasonably believe that there was an imminent threat of death or great bodily harm to her, and denies that Plaintiff has met her burden of proof that Chesna acted willfully and wantonly when she fired her firearm at Ross. Defendant Chesna denies the remaining allegations in paragraph 34.

35.     As a direct and proximate result of the death of Devon Ross, his next of kin have suffered great losses of a personal and pecuniary nature including the loss of companionship and society, subjecting defendant Jamie Chesna to liability pursuant to 740 ILCS 180/1, commonly referred to as the Wrongful Death Act.

**Answer**:     Defendant Chesna denies the allegations in paragraph 35.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit, and for such other relief as the court deems appropriate.

## COUNT IV - SURVIVAL ACT - BATTERY
(v. JAMIE CHESNA)

36.     Plaintiff re-alleges paragraphs 32-34 of this Complaint as if fully set forth herein.

**Answer**:     Defendant Chesna restates her answers to paragraphs 32-34 of this Complaint as her answer to paragraph 36 as though fully set forth herein.

37.     As a further direct and proximate result of defendant Jamie Chesna's aforementioned intentional conduct, Devon Ross suffered serious injuries of a personal and pecuniary nature, including but not limited to great pain and suffering prior to his death, subjecting defendant Jamie Chesna to liability pursuant to the Illinois Survival act, 755 ILCS 5/27-6.

**Answer**:     Defendant Chesna denies the allegations in paragraph 37.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit, and for such other relief as the court deems appropriate.

11

## COUNT V - 42 U.S.C. § 1983 - EXCESSIVE FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH AMENDMENTS TO THE UNITED STATES CONSTITUTION
### (v. JAMIE CHESNA)

38.     Plaintiff re-alleges paragraphs 1-25 of this Complaint as if fully set forth herein.

**Answer**:     Defendant Chesna restates her answers to paragraphs 1-25 of this Complaint as her answer to paragraph 38 as though fully set forth herein.

39.     At all times mentioned herein, defendant Jamie Chesna was a uniformed Chicago police officer acting under color of law.

**Answer**:     Defendant Chesna admits the allegations in paragraph 39.

40.     Using deadly force against Devon Ross was objectively unreasonable because Devon Ross did not pose an imminent threat of death or serious bodily injury to defendant Jamie Chesna or any other person.

**Answer**:     Defendant Chesna denies the allegations in paragraph 40.

41.     The force used by defendant Jamie Chesna was inappropriate, unwarranted and unjustified.

**Answer**:     Defendant Chesna denies the allegations in paragraph 41.

42.     The conduct of defendant Jamie Chesna constituted excessive force in violation of the Fourth Amendment of the United States Constitution, as incorporated into the Fourth Amendment of the United States Constitution.

**Answer**:     Defendant Chesna denies the allegations in paragraph 42.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit and attorney's fees, and for such other relief as the court deems appropriate.

12

**COUNT VI - 42 U.S.C. § 1983 - MUNICIPAL LIABILITY FOR EXCESSIVE
FORCE IN VIOLATION OF THE FOURTH AND FOURTEENTH
AMENDMENTS TO THE UNITED STATES CONSTITUTION**
(v. CITY OF CHICAGO)

43.     Plaintiff re-alleges paragraphs 1-25 of this Complaint as if fully set forth herein.

**Answer**:     Defendant Chesna restates her answers to paragraphs 1-25 of this Complaint

as her answer to paragraph 43 as though fully set forth herein.

44.     Defendant City of Chicago tacitly approves of unconstitutional and unlawful uses
of deadly force by its employee police officers through one or more of the following policies,
practices, and/or customs:

a.      Fails to objectively investigate police-involved shootings, and instead conducts
        sham investigations which invariably exonerate shooting police officers
        irrespective of the actual facts and circumstances of the shooting, thereby ratifying
        and encouraging unlawful shootings;

b.      Publicly proclaims all police-involved shooting to be justified irrespective of the
        actual facts and circumstances of the shooting;

c.      Fails to maintain accurate or complete records of its employee-police officers'
        misconduct or prior discipline;

d.      Fails to subject its employee police-officers to discipline when they use deadly
        force in circumstances where it is obviously unjustified;

e.      Maintains a "code of silence":  an implicit understanding between and among
        members of the Chicago Police Department under which members 1) refuse to
        report each others' misconduct and 2) take efforts to legitimize each others'
        misconduct.

**Answer**:     Defendant Chesna denies the allegations in paragraph 44, including

subparagraphs 44(a) through 44(e).

45.     The aforementioned policies, practices, and/or customs individually and together
have been maintained and implemented by defendant City of Chicago with deliberate
indifference to the constitutional rights of the citizens of Chicago to be free from excessive force.

**Answer**:     Defendant Chesna denies the allegations in paragraph 45.

13

46.     One or more of the aforementioned customs, policies, and/or procedures was the moving force behind defendant Jamie Chesna's unlawful use of deadly force against Devon Ross, and is/are therefore a direct and proximate cause of his death and his next of kin's damages.

**Answer**:     Defendant Chesna denies the allegations in paragraph 46.

WHEREFORE, Defendant Chesna requests judgment in her favor and against the plaintiff, costs of suit and attorney's fees, and for such other relief as the court deems appropriate.

## AFFIRMATIVE DEFENSES

### First Affirmative Defense

1.     Defendant Chesna is a government official, namely a police officer, who performs discretionary functions.

2.     At all times material to the events alleged in this complaint, a reasonable police officer objectively viewing the facts and circumstances that confronted Defendant Chesna, including the fact that plaintiff's decedent, Devon Ross, had committed an aggravated battery upon her and refused to cease his actions which placed Chesna in imminent threat of death or great bodily harm, could have believed her actions to be lawful, in light of clearly established law and the information that Defendant Chesna possessed.

3.     Defendant Chesna is therefore entitled to qualified immunity as to plaintiff's federal claims.

### Second Affirmative Defense

1.     As to plaintiff's state law claims, at the time of the occurrence alleged in this complaint, Section 2-202 of the Illinois Governmental and Governmental Employees Tort

14

Immunity Act ('Tort Immunity Act") was in effect and provided as follows:

> A public employee is not liable for his act or omission in the
> execution or enforcement of any law unless such act or omission
> constitutes willful and wanton conduct.

745 ILCS 10/2-202.

2.     At all times relevant to this complaint, Defendant Chesna was a public employee

who was engaged in the execution and enforcement of the law.

3.     Defendant Chesna is not liable for any of the claims alleged because Plaintiff cannot

meet her burden of establishing that Defendant Chesna's acts or omissions in the execution or

enforcement of any law constituted willful and wanton conduct.

<u>Third Affirmative Defense</u>

1.     As to plaintiff's state law claims, at the time of the occurrence alleged in this

complaint, Section 2-201 of the Tort Immunity Act was in effect and provided as follows:

> Except as otherwise provided by Statute, a public employee
> serving in a position involving the determination of policy or the
> exercise of discretion is not liable for an injury resulting from his
> act or omission in determining policy when acting in the exercise
> of such discretion even though abused.

745 ILCS 10/2-201.

2.     At all times relevant to this complaint, Defendant Chesna was a public employee

serving in a position involving the determination of policy or the exercise of discretion.

3.     Defendant Chesna is not liable for any of the claims alleged because her decisions

regarding the use of force, deadly or otherwise, against plaintiff's decedent, Devon Ross, based

upon the facts and circumstances known to her at the time, including the fact that Devon Ross

had committed an aggravated battery upon her and refused to cease his actions which placed her

15

in imminent threat of death or great bodily harm, were decisions that involved the determination

of policy and the exercise of discretion for which she is immune from liability.

Fourth Affirmative Defense

1.     As to plaintiff's state law claims, at the time of the occurrence alleged in this

complaint, Section 4-102 of the Tort Immunity Act was in effect and provided as follows:

> Neither a local public entity nor a public employee is liable for
> failure to establish a police department or otherwise provide police
> protection service or, if police protection service is provided, for
> failure to provide adequate police protection or service, failure to
> prevent the commission of crimes, failure to detect or solve crimes,
> and failure to identify or apprehend criminals.  This immunity is
> not waived by a contract for private security service, but cannot be
> transferred to any non-public entity or employee.

745 ILCS 10/4-102.

2.     At all times relevant to this complaint, Defendant Chesna was a public employee

providing police service.

3.     To the extent any allegation in this complaint can be construed as a claim that

Defendant Chesna failed to provide adequate police protection or services, failed to prevent the

commission of crimes, failed to detect or solve crimes, and/or failed to identify or apprehend

criminals, Defendant Chesna is not liable for such claims.

16

**JURY DEMAND**

Defendant Jamie M. Chesna requests a trial by jury.

Respectfully submitted,

/s/ Joseph M. Polick
Joseph M. Polick
Chief Assistant Corporation Counsel

30 N. LaSalle Street - Suite 900
Chicago, Illinois  60602
(312) 744-8335

17