IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | | |
|---|---|---|
| LISA A. ROSS as special Administrator of the Estate of Devon A. Ross, Deceased, | ) ) ) | |
| Plaintiff, | ) ) | |
| v. | ) ) | No. 13 C 751 |
| CITY OF CHICAGO, et al., | ) ) | |
| Defendants. | ) | |

**MEMORANDUM OPINION**

SAMUEL DER-YEGHIAYAN, District Judge

This matter is before the court on the parties' motions in limine. For the reasons stated below, the motions are granted in part and denied in part. Plaintiff's motion for leave to supplement her Rule 26(a)(2)(C) Disclosure is granted.

**DISCUSSION**

I. Ross's Motions in Limine

Plaintiff Lisa A. Ross (Ross) has filed twenty-nine motions in limine.

A. Failure to Call a Witness

Ross seeks in Motion in Limine 1 to bar any evidence or argument that Ross failed to call any equally available witness at trial. Specifically, Ross is concerned

that Defendants may comment on the absence of testimony by one or more of the civilian eyewitnesses to the shooting (Shooting) of Devon Ross. Defendants correctly point out that it is a fundamental trial strategy to point to the absence of evidence to support a plaintiff's case such as the absence of eyewitness testimony. Nothing prohibits Defendants from making such arguments as to the absence of witnesses. Ross cites *Oxman v. WLS-TV*, 12 F.3d 652 (7th Cir. 1993) in support of her motion. (P Mot. 1). However, in *Oxman* the Court addressed a situation when a party seeks to argue to the trier of fact that an adverse inference should be drawn from another party's failure to call a certain witness. 12 F.3d at 661. Defendants have not indicated that they intend to argue for such an adverse inference or imply that such an inference should be made by the trier of fact. Therefore, Ross's Motion in Limine 1 is denied.

### B. Evidence Recovered from Car

Ross seeks in Motion in Limine 2 to bar the introduction of any evidence concerning any evidence recovered from the car (Car) that Devon Ross was driving. Ross argues that Defendant Jamie Chesna (Chesna), who was the officer that allegedly shot Devon Ross, did not know about any of the evidence in the Car when she shot Ross, and that the evidence is irrelevant and overly prejudicial. Defendants contend that they intend to offer as evidence a fully loaded semi-automatic handgun (Gun) that was recovered from the floor of the Car next to the driver's seat. An excessive force claim brought pursuant to 42 U.S.C. § 1983 is evaluated "under the

Fourth Amendment's objective reasonableness standard." *Common v. City of Chicago*, 661 F.3d 940, 943 (7th Cir. 2011). Generally, the court should focus on "those circumstances known and information available to the officer at the time of h[er] action (firing the fatal shot)." *Id.* (internal quotations omitted)(quoting *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988)). However, the Seventh Circuit has made clear that there is no "black-letter rule precluding the admission of evidence outside the officer's knowledge." *Common*, 661 F.3d at 943 (internal quotations omitted)(quoting *Sherrod*, 856 F.2d at 806).

In the instant action, Defendants indicate that they do not intend to argue that Chesna was aware of the Gun when she pursued Devon Ross on foot, or that the Gun impacted Chesna's decision-making at the time of the Shooting. Instead, Defendants indicate they intend to reference the Gun because it corroborates Chesna's version of events. Although the presence of the Gun is not relevant in assessing the objective reasonableness of the actions of an officer in Chesna's position, the Gun is relevant in assessing the credibility of her testimony. Defendants indicate that they intend to argue that Chesna shot Devon Ross because he attempted to avoid arrest by grabbing Chesna, repeatedly striking her, and trying to disarm her. The fact that Devon Ross was driving the Car with the Gun loaded and easily accessible in violation of state law is relevant evidence in assessing whether Devon Ross acted in the unlawful manner as claimed by Chesna. The presence of the Gun shows a disregard for the law and gave Devon Ross a motivation to evade arrest because he potentially faced a weapons charge for the Gun.

Ross argues that if Devon Ross was so worried about getting charged for the Gun, it would not have been logical for Devon Ross to flee the Car and leave behind the Gun. However, once Devon Ross was being followed in the Car by Chesna and her partner in their squad car, Devon Ross reasonably could have feared that once he stopped, the Car would be searched and the Gun would have been discovered. It would not have been unreasonable for Devon Ross to flee on foot without the Gun and try and put as much distance between himself and the Gun as possible.

In addition, Defendants indicate that they intend to offer evidence showing that at the time of the Shooting, Devon Ross was intoxicated. In such a state, Devon Ross could have forgotten to grab the Gun when he fled on foot and subsequently realized his mistake. Also, while perhaps a rational person would not physically assault an officer in order to avoid a weapons charge, or would have understood that the Gun would have been traced to its source through the Car that was left behind, in an intoxicated state, Devon Ross may have made decisions that in hindsight appear be not one that a sober person may have made. Defendants also indicate that before fleeing on foot, Devon Ross crashed the Car into a building, which may have further disorientated him. The presence of the Gun in the Car is extremely relevant in a case such as this where credibility of the testimony of the arresting officer will be a key issue, and such evidence is not overly prejudicial to Ross.

In *Estate of Escobedo v. Martin*, 702 F.3d 388 (7th Cir. 2012), the Seventh Circuit explained that it had "cautioned . . . against an overly broad reading of" the holding in *Sherrod*. *Id.* at 399. The Court held that "evidence unknown to officers at

the time force was used is also admissible to add credibility to an officer's claim that a suspect acted in the manner described by the officer." *Id.* at 400. Ross argues that *Escobedo* is limited to when a party opens the door to questioning about an issue such as the decedent's state of mind. (P Reply 4). Defendants are entirely justified in offering evidence that supports their theory of the case, which entails a state of mind by Devon Ross, that led him to physically assault and resist Chesna. If Ross attempts to portray Devon Ross acting in a manner entirely inconsistent with the testimony of Chesna, and contrary to the state of mind of Devon Ross that Defendants seek to prove at trial, Defendants should not be limited in their ability to rebut Ross's case. Ross has not shown any unwarranted prejudice to her.

Ross will be able to argue to the trier of fact regarding the weight that should be accorded to any evidence found in the Car. Ross can also request a limiting jury instruction as to consideration by the jury relating to the Gun. In addition, Defendants will not be permitted to display the Gun at trial in a manner that will be overly prejudicial to Ross. The court notes that Ross also argues that Defendants should not comment on a bottle of vodka found in the Car. However, Defendants do not indicate that they intend to introduce such evidence, and thus Ross's objection is moot. Therefore, Ross's Motion in Limine 2 is denied.

C. Evidence about the Area

Ross seeks in Motion in Limine 3 to bar Defendants from referring to the area where the Shooting occurred as a "high-crime area," or from otherwise describing

that area.  As indicated above, in determining whether an officer has used excessive force the court applies an "objective reasonableness" test.  *Payne v. Pauley*, 337 F.3d 767, 778 (7th Cir. 2003).  Defendants indicate that they do not intend to refer to the area of the Shooting as a "high-crime area."  (Ans. 6).  However, Defendants correctly point out that the knowledge of the area of the Shooting by a reasonable officer in Chesna's position would be relevant evidence in assessing the "circumstances known and information available to the officer" when the officer acted.  *Common*, 661 F.3d at 943 (internal quotations omitted)(quoting *Sherrod v. Berry*, 856 F.2d 802 (7th Cir. 1988)).  Ross has not shown that she will be prejudiced merely by Chesna's description of the area of the Shooting, and Ross's claim that the trier of fact will conclude that Devon Ross deserved to be shot because of the area where he was shot is pure speculation on the part of Ross.  Therefore, Ross's Motion in Limine 3 is denied.

D.  Use of the Term "Englewood"

Ross seeks in Motion in Limine 4 to bar Defendants from referring to the term "Englewood."  Ross argues that the term has a pejorative connotation and would be overly prejudicial to Ross.  Federal Rule of Evidence 403 provides that "[t]he court may exclude relevant evidence if its probative value is substantially outweighed by a danger of one or more of the following: unfair prejudice, confusing the issues, misleading the jury, undue delay, wasting time, or needlessly presenting cumulative evidence."  Fed. R. Evid. 403.  Defendants argue that Englewood is a recognized

neighborhood in Chicago and that it is not improper to reference the neighborhood by its proper name. Ross has failed to provide adequate support for her claim that the term "Englewood" has a negative connotation in the Chicago area. Ross has referenced nothing more than a press article and a television show to support her claim of a supposed bias against Englewood. Such evidence falls far short of showing that the trier of fact will be biased and will believe, as Ross claims, that Englewood is a place filled with gang violence and drug trafficking, and view Devon Ross in a negative light simply because he was driving in Englewood. The term Englewood is relevant in this case and Ross has not shown that the term would be overly prejudicial to Ross. In addition, the jury will be instructed to make their decision "fairly and impartially" and "not allow prejudice, fear, or public opinion to influence" them. Ross has not presented evidence showing that there is such a significant stigma of the term "Englewood" that would be overly prejudicial or that the trier of fact would be incapable of following the court's instructions. Therefore, Ross's Motion in Limine 4 is denied.

E.  Ross's Motions in Limine 5-29

Defendants indicate that they do not oppose certain motions in limine filed by Ross. Specifically, Defendants do not oppose the following motions: (1) Ross's Motion in Limine 5, seeking to exclude non-party witnesses until completion of trial, (2) Ross's Motion in Limine 6, seeking to bar argument that lawsuits increase costs, (3) Ross's Motion in Limine 7, seeking to bar reference to any potential sources of

7

collateral recovery, (4) Ross's Motion in Limine 8, seeking to bar reference that any party or witness is receiving public aid, (5) Ross's Motion in Limine 9, seeking to bar reference to taxation of lawsuit awards, (6) Ross's Motion in Limine 10, seeking to bar "lawsuit lottery" arguments, including comparing Ross's damages request to a "get-rich-quick" scheme, welfare program, or scam, (7) Ross's Motion in Limine 11, seeking to bar argument that Ross or her attorneys have asked for more in damages than she or they actually expect to be awarded, (8) Ross's Motion in Limine 12, seeking to bar argument that Ross's damages request is excessive in light of facts not before the jury, (9) Ross's Motion in Limine 13, seeking to bar argument that lack of a defense counsel rebuttal is unfair, and to bar defense counsel from saying he could rebut anything that Ross's counsel says, (10) Ross's Motion in Limine 14, seeking to bar Chesna from wearing a police uniform, including any medals, at trial, (11) Ross's Motion in Limine 15, seeking to bar any reference to any awards or commendations that Chesna has received in the course of her career with the Chicago Police Department (CPD), (12) Ross's Motion in Limine 16, seeking to bar argument that Ross's attorneys do not have to deal with life-threatening situations at work, (13) Ross's Motion in Limine 17, seeking to bar any argument that the job of a police officer is more difficult than that of a lawyer, (14) Ross's Motion in Limine 18, seeking to bar defense counsel from representing Ross's claim as one for murder or execution, (15) Ross's Motion in Limine 19, seeking to bar testimony about why Chesna decided to become a police officer, (16) Ross's Motion in Limine 20, seeking

to bar results or conclusions of any internal investigations into the Shooting, (17) Ross's Motion in Limine 21, seeking to bar evidence as to whether Chesna has discharged her weapon on an occasion on duty other than at the Shooting, (18) Ross's Motion in Limine 22, seeking to bar any reference to gangs, (19) Ross's Motion in Limine 23, seeking to bar argument that the reason no civilian witnesses are testifying for the police is that civilians in the neighborhood where the Shooting occurred do not come forward or are biased against the police, (20) Ross's Motion in Limine 24, seeking to bar any reference to Devon Ross's termination from employment with the United States Postal Service, (21) Ross's Motion in Limine 25, seeking to bar any reference as to whether Devon Ross paid income tax on his car dealership business, or whether that business was otherwise run in compliance with the law, (22) Ross's Motion in Limine 26, seeking to bar any evidence of the names or any other identification information of the other occupants in the Car, (23) Ross's Motion in Limine 27, seeking to bar any evidence of or reference to Devon Ross's involvement in an unrelated motorcycle accident, (24) Ross's Motion in Limine 28, seeking to bar any evidence of or reference to any prior arrests or convictions of any witnesses, except where Federal Rule of Evidence 609(a) permits the introduction of such evidence, (25) Ross's Motion in Limine 29 seeking to bar any evidence any evidence of or reference to any prior arrests or other suspected criminal activity of Devon Ross.  Therefore, Ross's Motions In Limine 5 through 29, being unopposed, are granted.

II.  Defendants' Motions in Limine

Defendants have filed nineteen motions in limine.

A. Evidence or Argument of a Police Cover-Up

Defendants seek in Motion in Limine 1 to bar Ross from introducing testimony, evidence, or argument that police officers in general lie, conspire, cover up or otherwise maintain a code of silence or blue wall to protect their fellow officers. Ross indicates that she does not intend to present any such generalized statements and will only present evidence relating to a cover-up if she decides to present evidence to show that an actual cover-up occurred relating to the Shooting. (Ans. D Mot. 1). Defendants also correctly point out that Ross's counsel will not be able to speculate during opening or closing arguments as to any police cover-up relating to the Shooting without sufficient evidence to support such a theory. If Ross intends to present an argument concerning an actual police cover-up, Ross must obtain leave of the court prior to making such an argument. Therefore, Defendants' Motion in Limine 1 is granted.

B. Possible Alternate Methods of Force

Defendants seek in Motion in Limine 2 to bar Ross from arguing that Chesna could have or should have used alternative methods of force. Ross agrees not to argue or imply that alternative methods of force could have or should have been used. (Ans. D. Mot. 2). Ross contends that she does intend to argue that the force used by Chesna was unreasonable, but Ross will be barred from referring to alternative methods of force in making such an argument. Therefore, Defendants' Motion in Limine 2 is granted.

### C. Ross's Inability to Offer His Account of Events and Other Witnesses

Defendants seek in Motion in Limine 3 to bar Ross from making statements or arguments that point out that Devon Ross is not able to present his version of the facts at the time of the Shooting or that Chesna killed other witnesses. Defendants correctly point out that since the trier of fact will be aware that Devon Ross is deceased, it will be self-evident that Devon Ross is not able to testify at trial. Such a statement by counsel would serve no purpose other than to garner emotional sympathy, which is an improper basis for the presentation of evidence or arguments at trial. Ross has not presented any compelling reasons as to why her counsel would make such a statement for a legitimate objective. As to statements that Chesna killed other witnesses to the Shooting, Ross has not offered justification for the presentation of such statements. Therefore, Defendants' Motion in Limine 3 is granted.

### D. Expert Opinions After February 14, 2014

Defendants seek in Motion in Limine 4 to bar Ross from presenting expert testimony or opinions that were not disclosed on or before February 14, 2014. Ross asserts that she should be able to present the opinion of Dr. Hilary McElligott (McElligott), who was disclosed by Ross sometime after February 14, 2014. As to McElligott, Defendants indicate that through amended disclosures by Ross relating to McElligott they were sufficiently apprised as to McElligott. (D Reply 2). Defendants indicate that in their motion they simply seek to close the door at this juncture to any other unidentified experts that Ross may decide to present in an

untimely fashion in the future. Ross has not identified any other experts disclosed after February 14, 2014, that she believes should be presented at trial. Therefore, Defendants' Motion in Limine 4 is granted.

E.  Defendants' Motions in Limine 5-19

Ross indicates that she does not oppose certain motions in limine filed by Defendants. Specifically, Ross does not oppose the following motions: (1) Defendants' Motion in Limine 5, seeking to bar Ross from presenting the testimony of Cassandra Cochran, (2) Defendants' Motion in Limine 6, seeking to bar Ross from presenting evidence or argument of violations of CPD general orders, rules and regulations, (3) Defendants' Motion in Limine 7, seeking to bar Ross from presenting evidence or argument regarding the conduct, quality or alleged inadequacy of the CPD and/or Independent Police Review Authority (IPRA) investigations of the incident, (4) Defendants' Motion in Limine 8, seeking to bar Ross from presenting evidence of the IPRA investigation, (5) Defendants' Motion in Limine 9, seeking to bar Ross from presenting evidence or argument of other lawsuits and/or citizens' complaints against Chesna and any non-party police witnesses, (6) Defendants' Motion in Limine 10, seeking to bar Ross from presenting evidence or argument that the City will indemnify Chesna for compensatory damages, (7) Defendants' Motion in Limine 11, seeking to bar Ross from presenting any witnesses not disclosed by Ross during discovery, (8) Defendants' Motion in Limine 12, seeking to bar Ross from presenting the testimony of Khristan Triplett, (9) Defendants' Motion in Limine 13, seeking to bar Ross from presenting evidence

or argument that Chesna or other police personnel delayed calling for an ambulance for Devon Ross, that the ambulance response time was too long, or that the medical treatment provided was inadequate or improper, (10) Defendants' Motion in Limine 14, seeking to exclude witnesses from the courtroom, (11) Defendants' Motion in Limine 15, seeking to bar Ross from presenting evidence or argument that the medical examiner's manner of death was classified as a homicide, or use of the term "homicide" to refer to Devon Ross's death, (12) Defendants' Motion in Limine 16, seeking to bar Ross from presenting evidence or argument of the Fraternal Order of Police disclaimer given by Chesna or other non-defendant police officers before they gave statements to IPRA or their superiors, (13) Defendants' Motion in Limine 17, seeking to bar Ross from presenting evidence or argument of other incidents of alleged police misconduct by CPD or other law enforcement agencies in the Chicago metropolitan area or other jurisdictions, (14) Defendants' Motion in Limine 18, seeking to bar Ross from questioning witnesses as to whether they determined or believed Chesna's use of deadly force was justified or unjustified, (15) Defendants' Motion in Limine 19, seeking to bar Ross from making references to post-Shooting activity by civilian bystanders who appeared at or near the scene of the occurrence, including but not limited to, comments about any delay in removing Devon Ross's body from the scene, allowing his family onto the scene, or the propriety of police activity in preserving the scene. Therefore, Defendants' Motions In Limine 5 through 19, being unopposed, are granted.

## CONCLUSION

Based on the foregoing analysis, Ross's Motions In Limine 1, 2, 3, and 4 are denied and Ross's Motions In Limine 5 through 29 are granted. Defendants' Motions In Limine are granted in their entirety.

_____
Samuel Der-Yeghiayan
United States District Court Judge

Dated: April 3, 2014